**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DIANA BRADLEY, et al.,

    Plaintiffs,

v.

KEVIN MILLER, et al.,

    Defendants.

Case No. 1:10-cv-760

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

**I. Background**

The background of this case was set forth in the Court's last Order, but is repeated here for the convenience of the Court.

On October 29, 2010, three individual Plaintiffs, through counsel, initiated suit against three individual and three entity Defendants,[1] alleging that Plaintiffs had been victims of a "real estate securities Ponzi scheme" in violation of both state and federal law. (Doc. 1).  As recounted in the Court's Memorandum Order of September 28, 2011, aside from initiation of the lawsuit, Plaintiffs did little in the first year of litigation to prosecute their case.  They filed no Rule 26(f) report, and did not effect service on four of the Defendants (one of whom is deceased). (See Doc. 21).  Plaintiffs did apparently serve the three entity Defendants, through service on their alleged President, but not within the 120 days allotted by Rule 4(m), Fed. R. Civ. P.  (*Id*).

---

[1] The original individual defendants were Kevin Miller and James Powell, both incarcerated, and David Colwell (deceased).  The original corporate defendants were Capital Investments, Great Miami Debentures, and Great Miami Real Estate, LLC.

Based upon the apparent lack of timely prosecution and the federal incarceration of the two living individual Defendants (both proceeding *pro se*), the Court directed Plaintiffs to "show cause as to why the corporate Defendants and individual (deceased) Defendant David Colwell should not be dismissed." (Doc. 21 at 3). In addition, the Court directed Plaintiffs to state "whether they intend to continue to prosecute this action against the two properly served individual Defendants." (*Id.*). Plaintiff thereafter filed a response to the Court's "show cause" order, as well as a motion seeking a retroactive extension of time in which to complete service on the three corporate Defendants. The Court granted the Plaintiffs' motion to construe service upon the three entities as timely, and directed the corporate Defendants until December 12, 2011 to answer the complaint. (Doc. 27).

No answer or other response has ever been filed by the entity Defendants. In the meantime, the record reflects that mail sent to Kevin Miller, the only defendant who has ever filed an answer,[2] has been returned as undeliverable as he is apparently no longer incarcerated at the institution at which he was initially served with the Complaint. (Docs. 30, 31, 34, 37).

Having been ordered to do so by this Court, Plaintiffs filed a belated Rule 26(f) report on December 15, 2011. Plaintiffs also expressed their intention to amend their complaint and add new Defendants and/or new claims. (Docs. 23, 32). On April 16, 2012, nearly 18 months after initiating suit, Plaintiffs moved to amend their complaint to add both new defendants and new claims. (Doc. 39). Perhaps not surprisingly given the lack of

---

[2] As noted, the corporate defendants never filed an answer. Likewise, Defendant James Powell, served at the Federal Correctional Institution in Morgantown, West Virginia, never filed an answer or response. Plaintiffs have not sought entry of default against any of these Defendants. In April 2012, all four filed notices of change of address, to the Elkton Federal Correctional Institution, in Lisbon, Ohio. (Docs. 41-44).

2

notice to the only *pro se* Defendant who has appeared of record (given the return of undeliverable mail), no one responded or objected to the proposed amendment. Although the Court granted Plaintiff's unopposed motion, the Court took care to state that it "was expressing no view as to the propriety of any defenses to the proposed amendment, but will grant Plaintiffs' motion to amend based solely upon the lack of any objection on the present record." The Court also encouraged Plaintiffs to "use their best efforts to move this case forward." (Doc. 45 at 3).

Plaintiffs filed their amended complaint on May 17, 2012, reiterating their claims against all of the original Defendants (except the deceased individual), but also adding new claims and new defendants, including: James Wilburn Powell,[3] Curtis Powell, Deanna Powell, Hubert Rials, and Chatsworth Jacobs. (Doc. 46). The record reflects that James Wilburn Powell and Curtis Powell filed answers to the amended complaint (Docs. 64, 69), and Defendant Hubert Rials responded with a motion to dismiss all claims against him (Doc. 61). Defendant Deanna Powell responded to the complaint with a motion for a more definite statement, to which Plaintiffs have filed a response.[4] (Docs. 72, 74). Defendant Chatsworth Jacobs has yet to appear, although the record concerning service on that Defendant is unclear.[5]

None of the four Defendants who previously failed to answer (individual James

---

[3] James Wilburn Powell is the father of one of the originally named Defendants, James Powell.

[4] That motion is addressed by separate Order filed herewith.

[5] A summons was returned unexecuted as to Defendant Jacobs, indicating that he was unknown at the listed address. (Doc. 62). The record reflects service via ordinary mail through by the Clerk of Court, (Doc. 59), as well as a "Notice for Order for Service by Publication" on Defendant Jacobs. (Doc. 70). All documents reflect the address provided for Mr. Jacobs by Plaintiffs.

Powell, or the three corporate entities) have filed an answer or response to Plaintiffs' amended complaint. Despite this Court having noted on several occasions the fact that Plaintiffs have never moved for entry of default, Plaintiffs have continued to ignore the failure of the four referenced Defendants to answer or otherwise appear.

Plaintiffs have filed a response in opposition to Rials' motion to dismiss, to which Defendant has filed a reply. For the reasons discussed below, I recommend that Defendant Rials' motion be granted, but only in part.

## II. Analysis of Defendant Rials' Motion to Dismiss

### A. Counts Two through Five (Federal RICO Counts)

As Defendant Rials notes, Count One of Plaintiffs' amended complaint contains no allegations against him. Plaintiffs describe Counts Two through Four as "federal RICO counts," with Count Five described as "RICO conspiracy." (Doc. 68 at 4). All of the referenced claims generally allege "Defendants' conduct constitute [sic] a violation of Racketeering Influenced and Corrupt Organization,"[6] and/or reference parts of the RICO statute, 18 U.S.C. §1962. All of the claims identify "Defendants" in the generic sense, without differentiating among the named individual or entity Defendants.

Defendant Rials argues that, while containing some allegations that reference him, Counts Two through Five of the amended complaint contain insufficient factual allegations to state a claim. Therefore, Defendant moves to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiff explains in his response that he is pursuing these federal RICO Counts only against James D. Powell and Kevin Miller, both of whom are alleged to have been

---

[6]RICO is the acronym for the "Racketeer Influenced and Corrupt Organization" Act.

convicted for criminal offenses "in connection with" securities fraud.  *See* 18 U.S.C. §1964(c).  Plaintiff concedes that "the federal RICO claims do not apply" to Rials.  (Doc. 68 at 4).  Therefore, Rials' motion to dismiss Counts Two through Five should be granted.

### B.  Counts Eight through Twelve

Like the rest of Plaintiffs' claims, Counts Eight through Twelve all refer to "Defendants" as a single group.  In Counts Eight through Ten, Plaintiffs summarily allege that "Defendants' conduct constitutes a violation of Ohio common law" and constitutes fraud, breach of contract, and negligence (Counts Eight, Nine, and Ten, Doc. 46, ¶¶225, 227, 229).  Counts Eleven and Twelve additionally allege that Defendants' conduct amounts to a fraudulent transfer under Ohio law, and a violation of Ohio civil conspiracy law. (Counts Eleven and Twelve, Doc. 46, ¶¶231, 233).  In their response to Rials' motion to dismiss, Plaintiffs again acknowledge that "[t]hese claims do not apply to Rials." (Doc. 68 at 20).  Therefore, Defendant Rials' motion to dismiss Counts Eight through Twelve also should be granted.

### C.  Counts Six and Seven

Plaintiffs oppose Defendant Rials' motion only as to Counts Six and Seven, both of which are state law claims that Plaintiffs assert are alleged in sufficient detail to survive Rials' motion to dismiss.  Defendant Rials first argues that because Plaintiffs have conceded that Plaintiffs have no federal claims against him, this Court should decline to exercise supplemental jurisdiction over the two state law claims purportedly against Rials.  However, the exercise of supplemental jurisdiction is discretionary with the Court, and in light of the common nucleus of facts alleged by Plaintiffs, it would frustrate the goals of

5

judicial economy to sever Plaintiffs' claims against Rials from this lawsuit. On the other hand, as discussed below, the Court agrees with Defendant Rials that Plaintiffs' claims against him should be dismissed as a matter of law for failure to state a claim.

Counts Six and Seven both allege violations of Ohio laws, known as the Pattern of Corrupt Activity statutes, that prohibit conduct similar to that prohibited by the federal RICO Act. *See* Ohio Rev. Code §§2923.31, *et seq*. (hereinafter "Ohio RICO"). While similar, Ohio's anti-racketeering law is somewhat broader than the federal RICO Act. For example, after 1995 amendments to the federal RICO Act, federal RICO claims could no longer rest on "garden variety" securities fraud. *Bald Eagle Area School Dist. v. Penn. Bank and Trust Co.*, 189 F.3d 321, 327 (3rd Cir. 1999). By contrast, Ohio RICO continues to permit a claim to be brought where one of the predicate acts is securities fraud, so long as a plaintiff alleges "at least one predicate act that is not a form of securities fraud, mail or wire fraud, or the interstate transportation of stolen property or securities." *Baker v. Pfeifer*, 940 F. Supp. 1168, 1181 (S.D. Ohio 1996); *see also* O.R.C. §2923.34(A) and (B).

Before turning to the parties' arguments, it is helpful to review the specific allegations that pertain to Rials. Plaintiffs' amended complaint generally alleges that Rials was among the Defendants who perpetuated a fraudulent "real estate/securities Ponzi scheme" (Doc. 46, ¶1). Plaintiffs allege that Rials (among others) "persuaded unsophisticated persons to invest" in Capital Investments and Great Miami Debentures, promising guaranteed rates of return and 100% guarantee of principal. (*Id*., ¶¶3, 110-111). Defendants Rials and Jacobs alone are alleged to have had a "distinct" role by serving as "Illegal Salesman [sic] for the enterprise." (*Id*., ¶¶15, 25, 100). The complaint alleges that

6

Rials and Jacobs are "persons" as defined in the federal RICO Act, and that "[t]here [sic] role was to persuade victims to invest in the illegal securities in Great Miami Real Estate, Capital Investments, and Great Miami Debentures." (*Id.*, ¶15). The amended complaint alleges that in 1998 and/or 1999, Rials lost his Ohio license to sell securities, but continued to sell securities to "unsophisticated victims." (*Id.*, ¶¶26, 106). Plaintiffs allege that Capital Investments paid Rials commissions for the sales, which he deposited into his Kentucky bank account. (*Id.*, ¶¶107, 108). Defendant James D. Powell also allegedly identified Rials as a contract agent of Capital investments. (*Id.*, ¶119).

### 1. Count Six - Ohio RICO Violation

In order to prevail on a civil claim for an Ohio RICO violation under O.R.C. §2923.34, a plaintiff must establish: "(1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise that exists separate and apart from the defendant." *Hall v. CFIC Home Mtg.*, 175 Ohio App.3d 587, 597, 888 N.E.2d 469 (12th Dist. Ct. App. 2008)(citing *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 83, 640 N.E.2d 235 (8th Dist. Ct. App. 1994)). The failure to plead any of the three essential elements with particularity results in a defective complaint that is subject to dismissal. *Universal Coach v. New York City Transit Authority, Inc.*, 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32 (8th Dist. Ct. App. 1993)(dismissing Ohio RICO claims for failure to plead elements with specificity). Defendant argues that Plaintiffs have failed

to adequately plead the first two elements of their claim against him.

### a. First Predicate Act - Alleged Commission of Securities Fraud

Under state law (but not federal law), one of the two criminal offenses that make up a claim for a violation of Ohio's RICO law can be securities fraud. Plaintiffs argue that they have sufficiently alleged acts taken by Rials, in connection with his role as "Salesman," to constitute securities fraud under various subparts of Ohio Rev. Code §1707.44. However, Defendant Rials argues that Plaintiffs' allegations -that Defendant Rials sold unregistered securities to unidentified purchasers, at unspecified dates and times - are simply insufficient to establish conduct that constitutes an indictable criminal offense under any Ohio criminal statute that would form *any* "predicate offense" under Ohio's Pattern of Corrupt Activity statute, O.R.C. §§2923.31, *et seq*. Plaintiffs respond by arguing that the sales made by Rials were sufficiently "related" to the alleged RICO enterprise, because Rials was involved in selling illegal securities, and was an agent and/or employed as a salesman by Capital Investments.

Plaintiffs rely almost exclusively on *State v. Haley*, 1994 Ohio App. Lexis 1373 (2d Dist. Ct. App., March 30, 1984). In *Haley*, the defendant had entered a no-contest plea and was convicted of 23 counts of selling unregistered securities, six counts of passing bad checks, one count of false representation in the sale of securities, and one count of engaging in a pattern corrupt activity in violation of Ohio's RICO statute. The Court upheld the Ohio RICO conviction on the basis that the facts alleged in the indictment (which the Defendant did not contest) were sufficient to establish a pattern of corrupt activity. The indictment alleged not only that Haley was employed by or associated with four different

8

corporations, and that Haley made false representations in order to sell unregistered securities on behalf of one or more of those corporations, but also that he directly participated in the affairs of the corporations by passing bad checks. *Haley* provides limited support for the proposition that Rials may be found guilty of the predicate offense of securities fraud based upon his alleged sale of unregistered securities, although the case does not support Plaintiffs' suggestion that Rials can be found guilty of an Ohio RICO violation *merely* by being a "Salesman" of the allegedly fraudulent securities.

The difficulty in applying *Haley* to this case is that here, the Defendant is not accused by the State of a criminal offense, but instead Plaintiffs are suing Defendant for specific harm to them. To that extent, the complaint appears to be deficient even to allege the predicate act of securities fraud, because it fails to allege that Defendant Rials sold any unregistered securities on any particular date to either any of the Plaintiffs in this case, or to any other specific person.

### b. Second Predicate Act - Money Laundering

Leaving aside the issue of whether Plaintiffs have sufficiently alleged that Rials committed the predicate offense of securities fraud, Defendant's central argument is that Plaintiffs have failed to allege a second, separate and distinct predicate act, other than securities fraud. As stated, when a party seeks to bring a claim for a violation of §2923.32(A)(1), the Ohio RICO Act requires at least one of the two predicate acts to be something other than securities fraud. *Baker v. Pfeifer*, 940 F. Supp. at 1181. Plaintiffs assert that their allegations sufficiently allege that Rials engaged not just in securities fraud, but also in money laundering.

9

Defendant objects, noting that Plaintiffs fail to cite to any specific paragraphs that allege that Rials committed any act of money laundering, or any other predicate act. I agree that the allegations of Plaintiffs' amended complaint are insufficient to allege that Rials committed the offense of money laundering, and therefore fail to state a claim against Rials for a violation of Ohio RICO.

The Ohio money laundering statute makes it illegal for any person to "conduct a transaction knowing that the property is the proceeds of some form of unlawful activity" for various corrupt purposes. Money laundering is defined in part as conduct that either has "the purpose of committing or furthering the commission of corrupt activity" or is done "with the intent to conceal or disguise the nature, location, source, ownership, or control of the property." O.R.C. §1315.55(A).

Plaintiffs argue that because they have alleged that James D. Powell paid Rials for his illegal work in selling Capital Investment securities, Rials' receipt of commissions and deposit of some twenty checks into his Kentucky bank account amounted to "accepting numerous payments" that violated unspecified provisions of the Ohio money laundering statute. As support for this theory, Plaintiffs cite *State v. Ross*, 2012 WL 440821, 2012 Ohio App. Lexis 480 (Feb. 13, 2012), in which the Ohio Court of Appeals affirmed multiple convictions under Ohio law, including Ohio RICO, conspiracy, money laundering, bribery, unlawful interest in a public contract, and failing to file a tax return, of an attorney who deposited payments from bribes relating to an illegal enterprise into his IOLTA account.

*Ross* is factually and legally distinguishable from the present case. In *Ross*, the attorney/ County Commissioner was actually involved in the bribery scheme at issue, and was alleged to have participated in awarding an unlawful public contract in exchange for

10

kick-backs. The defendant argued on appeal that the evidence was insufficient to support his conviction for money laundering because he had not done "anything to disguise or misrepresent the source of any funds." The court affirmed in part because the evidence showed that defendant knew that the proceeds were obtained by unlawful means and specifically deposited them into his IOLTA account and/or a business account in order to create the false appearance that the payments were for legal services or for legitimate business.

By contrast in this case, Plaintiffs allege only that Rials deposited commissions from the sale of worthless securities into his personal account. The deposits alleged to have been made by Rials do not constitute an intent to deceive others as to the nature of the payments; the deposits were made into a regular banking account - not an account specified for some other purpose. If the deposit of monies from alleged securities fraud were alone sufficient to constitute "money laundering," then virtually every instance of securities fraud would simultaneously constitute money laundering and violate Ohio's RICO law. But the definition of "money laundering" under Ohio law has never been stretched quite so thin, and Ohio law is clear that some criminal offense other than securities fraud must be alleged as one of the two minimum predicate acts required by Ohio RICO.

As Defendant notes, Plaintiffs' amended complaint contains no reference to money laundering or to any other predicate act that Plaintiffs believe Rials committed. Reviewing the amended complaint, the allegations would not appear to satisfy any of the four possible definitions of money laundering under Ohio law. Not only is the complaint silent as to any "intent to conceal or disguise the nature, location, source, ownership, or control" of money as would be required under O.R.C. §1315.55(A)(2), but none of the deposits exceeded ten

11

thousand dollars, or is alleged to have been made "with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity" as required under two additional definitions contained in O.R.C. §§1315(A)(2) and (4). That leaves the only possible definition of money laundering as one defining the act as conducting a transaction "knowing that the property involved in the transaction is the proceeds of some form of unlawful activity *with the purpose of committing or furthering* the commission of corrupt activity." ORC §1314.55(A)(1)(emphasis added). As reflected by the italicized language, however, Plaintiffs would have had to allege that Rials deposited the commission checks in order to commit or further the commission of corrupt activity. No such allegations are either included in or reasonably inferred from, the amended complaint. Thus, Defendant is entitled to dismissal of Plaintiff's claims against him based upon Plaintiffs' failure to allege "something more" than securities fraud alone.

### c. Pattern of Corrupt Activity

Although Plaintiffs' failure to allege a predicate act other than securities fraud provides a sufficient basis alone for granting Defendant Rials' motion, Defendant additionally argues that Plaintiffs have failed to adequately allege the second essential element of their Ohio RICO claim, a "pattern of corrupt activity." Pursuant to O.R.C. §2923.31(E), a "'pattern of corrupt activity' requires at least two incidents of corrupt activity that are related to the affairs of the same enterprise, which are not isolated or so closely related to each other and connected in time and place as to constitute a single event." *State v. Hughes*, 1992 WL 52473 * 6 (2d Dist. Ohio Ct. App., March 13, 1992).

Plaintiffs argue that they have sufficiently alleged a "pattern of corrupt activity,"

including a "threat of continued activity," relying solely on their allegation that Rials received and deposited twenty separate commission checks from April 1, 2005 through October 13, 2006. Plaintiffs argue that their allegations show a "closed period of repeated conduct...with a threat of repetition" sufficient to show continuity. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241, 109 S. Ct. 2893, 2902 (1989). Defendant counters that the factors of continuity and relationship, including the threat of continued criminal activity, are not satisfied merely by alleging that Rials deposited twenty individual commission checks.

"The existence of only one scheme to defraud does not automatically preclude the finding of a pattern." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994)(single contractual scheme lasting seventeen months insufficient to show continuity). Nevertheless, the Sixth Circuit has found the existence of a single scheme to be "significant when combined with other relevant factors in showing a lack of required 'continuity.'" *Id.*, quoting *U.S. Textiles, Inc. v. Anheuser Busch Cos., Inc.*, 911 F.2d 1261, 1269 (7th Cir. 1990). While this issue appears close given the single scheme alleged in this case, I conclude that Plaintiffs' allegations that Rials participated in the alleged securities fraud by depositing 20 checks over eighteen months is - barely - sufficient to allege a "pattern" of corrupt activity in this case. Thus, should a reviewing court disagree with my conclusion that Plaintiffs have failed to sufficiently allege two predicate acts, including an act other than securities fraud, I would recommend that Defendants' motion to dismiss Count Six be denied.

### 2. Count Seven

Whereas Count Six alleges a violation of Ohio's RICO law, Count Seven asserts a claim of conspiracy to violate Ohio's RICO law. *See* O.R.C. §§2923.31(I), 2923.34(A). Because it is broader than the federal RICO statute, Ohio imposes a type of "strict liability" on persons who are guilty of participating in, "directly *or indirectly*," "two or more incidents of corrupt activity...that are related to the affairs of the same enterprise." *State v. Siferd*, 151 Ohio App.3d at 119, 783 N.E.2d 591, 603 (3rd Dist. Ct. App. 2002)(emphasis added). Based upon this concept of "strict liability," Plaintiffs are not required to prove that Rials himself committed two or more predicate acts in order to prove the conspiracy offense alleged in Count Seven. Instead, Plaintiffs need only show that Rials cooperated in a "common plan." *See Nat'l Century Financial Enterprises, Inc. v. J.P. Morgan Chase Bank*, 604 F. Supp.2d 1128, 1157 (S.D. Ohio 2009)(holding that liability under Ohio's RICO law may be premised upon a conspiracy theory, in which case "the plaintiff is not required to prove that each defendant committed two or more predicate acts."). However, *Nat'l Century Financial Enterprises* still required proof that the conspiracy was to violate Ohio's RICO law, and to that extent require proof that the enterprise (even if not each individual Defendant) engaged in two or more predicate acts.

Plaintiffs argue that they have sufficiently alleged their conspiracy count against Rials, relying on their reiterated argument that Rials engaged in money laundering. As stated, I find the allegations in the complaint to be insufficient to allege money laundering by Rials.

Alternatively, however, Plaintiffs seek to hold Rials liable for the conspiracy claim

based upon his participation in the "common plan," in which the enterprise itself engaged in the predicate act of "Tampering with Records," in violation of O.R.C. §2913.42(A)(1)-(2). *Accord State of Ohio v. Willan*, 2011 WL 6749842, 2011 Ohio App. Lexis 5435 (9th Dist. Ct. App., Dec. 21, 2011). As with the alleged predicate act of "money laundering," neither the word "tampering" nor the statutory reference appear anywhere in the amended complaint. To support their theory that "tampering" by other Defendants is adequately alleged, sufficient to make out a violation of Ohio's RICO law through the commission of that predicate act by the enterprise, Plaintiffs turn to their allegations against other individual Defendants. The amended complaint alleges generally that:

> ¶34. The purposes of this Fraudulent Enterprise were to (1) purchase a "portfolio" of real estate properties based on highly-leveraged loans using such techniques as concealing pre-existing debt; (2) have Illegal Salesmen persuade unsophisticated investors to turn over their savings to the Fraudulent Enterprise to finance ongoing activities of the Enterprise; (3) have the President of Fraud [Defendant James D. Powell] act as president of the Bogus Shell Companies and the Worthless LLC; (4) provide a veneer of legitimacy by having the President of Fraud or Illegal Salesmen [Miller and Rials] give investors official-looking securities documents, monthly statements, and lulling letters, indicating that the investors' funds were earning impressive profits in the Bogus Shell Companies and the Worthless LLC; (5) employ a Scam Investor [David Colwell, deceased] to act as custodian/trustee for investors' roll-over retirement accounts, so that he could siphon off the investors' funds for use by the enterprise; (6) have the Fraudulent Enterprise pay off older investors' accounts as they came due by using an influx of funds from newer unsophisticated investors; (7) take the money that was left for personal use by the Illegal Salesmen, President of Fraud, and Scam Investor; (8) keep as much of the "portfolio" of properties as possible in control by Powell family members.

(Doc. 46).

Plaintiffs contend that additional paragraphs allege that various individuals engaged in "tampering" on behalf of the Enterprise. For example, Plaintiffs now argue that James D. Powell engaged in the crime of "tampering" under Ohio law, when he filed a "Declaration

of Feasibility" with Fiserv, a non-party investment support company located in Denver, Colorado. (Doc. 46, ¶ 61). Plaintiffs allege that Fiserv acted as a custodian/trustee for rollover accounts. (Doc. 46,¶ 62). However, it is not clear to this Court how these allegations would constitute the criminal offense of tampering, which requires proof that a person, with intent to defraud, acted to "falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." O.R.C. §2913.42(A)(1).

Plaintiffs allege that another co-conspirator, Defendant David Colwell, was appointed to carry out financial and investment responsibilities, with an intent to defraud investors, such that his appointment also constitutes criminal tampering. (Doc. 46, ¶ 62). Again, however, this allegation does not appear to include an essential element of tampering - the falsification, concealment, or alteration of a written record.

Plaintiffs further argue that Defendants James D. Powell and Curtis Powell engaged in "tampering" on behalf of the enterprise when they concealed debt relating to several properties in the course of completing mortgage applications. (Doc. 68 at 18-19, citing Doc. 46, ¶¶49-53, 86, 170, 180, 183, 186, 190). For example, ¶ 53 alleges that James D. Powell failed to file a second mortgage and promissory note with the Butler County Auditor's office, and ¶ 86 alleges that James D. Powell "concealed the preexisting debt on the Williams Properties" when he applied for refinancing with non-party lender, Option One Mortgage. Paragraph 170 alleges that James D. Powell signed a quit claim deed that signed away the interest in Midwest Trailer Park for $1.00, even though the appraised value of the property was $1,050,000. Paragraph 180 alleges that James Wilburn and a

person or entity identified only as "BP"[7] arranged to sell the same property to Curtis Powell for $700,000.00. Paragraphs 183, 186, and 190 allege that Curtis Powell applied to Silver Hill Financial (a non-party Floridian mortgage lender) for a mortgage on the Midwest Trailer Park, and in doing so failed to disclose a debt owed on that property to Defendant James Wilburn. Unlike the other allegations relied upon by Plaintiffs, these allegations - involving concealment of debt on mortgage refinancing applications - could reasonably be construed as satisfying the elements of the criminal offense of "tampering" under Ohio law.

Last, Plaintiffs contend that non-party Fiserv and Defendant Capital Investments engaged in "tampering" by sending "lulling letters" and false monthly statements to the Bradleys. (Doc. 46, ¶¶ 34, 102, 104). The referenced paragraphs in the complaint merely allege that various plaintiffs received "statements," not necessarily that those statements were altered or falsified.

However, mindful of the general duty to construe allegations liberally, and given both the context of the complaint as a whole and my conclusion that Plaintiffs have more clearly alleged falsification of mortgage application documents, I conclude that Plaintiffs have sufficiently alleged that some members of the enterprise engaged in the predicate offense of "Tampering with Records" in violation of Ohio law. Therefore, I further conclude that Defendant Rials' motion to dismiss Count Seven should be denied at this time.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** Defendant Rials' motion to dismiss all claims against him (Doc. 61) be **GRANTED** in part, with the exception

---

[7]The mysterious "BP" does not appear to be otherwise identified in the complaint.

of Count Seven. Plaintiffs' claim against Defendant Rials under Count Seven, for Conspiracy to violate Ohio's RICO law, should remain pending at this time.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DIANA BRADLEY, et al.,<br>   Plaintiffs,<br><br>  v.<br><br>KEVIN MILLER, et al.,<br><br>   Defendants. | Case No. 1:10-cv-760<br><br>Dlott, J.<br>Bowman, M.J. |

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).