UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DIANA BRADLEY, *et al.*, | : | Case No. 1:10-cv-760 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Stephanie K. Bowman |
| vs. | : | |
| | : | |
| KEVIN MILLER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER RESOLVING VARIOUS PENDING MOTIONS**

This civil action is pending before the Court on: (1) Defendant James W. Powell's motion to dismiss (Doc. 93) and the parties' responsive memoranda (Docs. 97, 98); (2) the Magistrate Judge's Report and Recommendations (Doc. 103) and the parties' objections thereto (Docs. 108, 116, 122); (3) Plaintiffs' motion for leave to file a supplemental memorandum (Doc. 112) and the parties' responsive memoranda (Docs. 115, 122); (4) Defendant James W. Powell's motion to strike the affidavit attached to Plaintiffs' motion for leave (Doc. 117) and Plaintiffs' responsive memorandum (Doc. 143); (5) Defendant James D. Powell's motion for an extension of time (Doc. 120) and the parties' responsive memoranda (Docs. 123, 134, 138); and (6) Plaintiffs' objection to the Magistrate Judge's Amended Order (Doc. 139).

## I.     FACTUAL BACKGROUND

Plaintiffs Diana and James Bradley[1] and Cora May Pyles[2], were allegedly the victims of a real estate/securities Ponzi scheme.  Mr. and Mrs. Bradley allegedly lost approximately $134,354.46 and Mrs. Pyles lost approximately $50,000.  Plaintiffs filed this lawsuit in an effort to recover those losses.  Defendants who allegedly perpetrated the fraud include Kevin Miller, James D. Powell,[3] Capital Investments, Great Miami Debentures, Great Miami Real Estate, LLC, James W. Powell, Curtis Powell, Deanna Powell, Hubert Rials, and Chatsworth Jacobs.  This Court incorporates herein the facts as explained in detail by the Magistrate Judge.  (*See* Doc. 103).

## II.     ANALYSIS

### A. Motion to Dismiss

The Magistrate Judge recommended that the motion to dismiss (Doc. 93) be granted in part as to counts eleven and twelve, but denied as to counts six and seven. Additionally, the Magistrate Judge recommended that Plaintiffs' claims against

---

[1] Mr. Bradley is deceased. (Doc. 125). There is currently a pending motion to substitute Diana Bradley, his wife, as the fiduciary for Mr. Bradley. (Doc. 126).

[2] Mrs. Pyles is approximately 85 years old. Mrs. Pyles is the mother of Diana Bradley and Carol Biehle. On or about July 22, 1998, Mrs. Pyles formed a revocable living trust. Some or all of the money she lost to the fraudulent scheme was from the trust. Mrs. Bradley and Mrs. Biehle are trustees of the trust. Mrs. Pyles has granted power of attorney to Mrs. Bradley and Mrs. Biehle. Accordingly, Mrs. Biehle is also a Plaintiff in this action.

[3] James D. Powell held himself out as the president and owner of Defendants Capital Investments ("CI"), Great Miami Debentures ("GMD"), and Great Miami Real Estate, LLC ("GMRE"). He is currently serving a 121 month sentence for conspiracy to commit mail fraud and wire fraud. (*See United States v. Powell*, 1:10cr75 at Doc. 17).

Defendants Chatsworth Jacobs, Capital Investments, Great Miami Debentures, and Great Miami Real Estate, LLC be dismissed for failure to prosecute.

### 1. *Counts eleven (fraudulent transfer) and twelve (conspiracy)*

Counts eleven and twelve allege that the Defendants (collectively) engaged in conduct that amounts to a fraudulent transfer under Ohio's Uniform Fraudulent Transfer Act ("UFTA"), as well as a violation of Ohio's civil conspiracy law concerning that Act. (Doc. 46 at ¶¶ 231, 233). These Counts are based upon the transfer of the Midwest Trailer Park property.

Ohio's Uniform Fraudulent Transfer Act was enacted to "create a right of action for a creditor to set aside an allegedly fraudulent transfer of assets." *Esteco, Inc. v. Kimpel*, No. 07-co-3, 2007 Ohio App. LEXIS 6323, at *4 (Ohio Ct. App. Dec. 20, 2007). Defendant James W. Powell argues that Plaintiffs' UFTA claims are barred by the applicable four-year statute of limitations. Specifically, the deed that reflects the transfer of the Midwest Trailer Park back to him and/or Curtis Powell was publicly recorded on August 20, 2007, but the amended complaint naming him was not filed until May 17, 2012 (more than four years later). Plaintiffs do not dispute these dates, but argue that a one-year discovery savings clause should be applied. Plaintiffs maintain that they did not learn that the Midwest Trailer Park had been transferred to James W. Powell until "January or February of 2012, when they discovered the transfer on the Butler County Recorder's website." (Doc. 97 at 16 *citing* Doc. 46 at ¶ 176).

There is a one-year discovery rule for fraudulent transfer claims. Ohio Rev. Code § 1336.09(A). Ohio's UFTA specifically contemplates "constructive discovery" by permitting actions brought outside the four-year period only if they are brought "within one year after the transfer…was or reasonably could have been discovered." *In re Spitaleri*, No. 05-94988, 2006 Bankr. LEXIS 4155, at *2 (N.D. Ohio May 9, 2006). *See also Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 785-86 (N.D. Ohio 2005) (stating that the Ohio discovery rule imposes a duty to inquire and that a party is charged with the knowledge he would have acquired with reasonable inquiry).[4] In determining whether a party should have discovered wrongful conduct, the relevant inquiry is whether the facts known "would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1300-01 (Ohio 1984). If the party has such knowledge and fails to make an inquiry "he is chargeable with knowledge which by ordinary diligence he would have acquired." *Id.* at 1301.

In sum, because the deed to the trailer park was filed on August 20, 2007, the relevant question is whether, prior to August 20, 2011, Plaintiffs discovered, or by the exercise of reasonable diligence, should have discovered that Defendants fraudulently transferred the Midwest Trailer Park property. Based on the relevant evidence articulated

---

[4] *See also Jones v. TransOhio Savs. Ass'n*, 747 F.2d 1037, 1039 (6th Cir. 1984) ("Repeatedly throughout our judicial history, the Supreme Court has approved the application of equitable tolling to statutes of limitations to prevent unjust results.").

in detail below, this Court concludes that Plaintiffs, three ordinary citizens, did employ reasonable diligence to uncover such alleged fraudulent transfer.[5]

This lawsuit was filed on October 29, 2010. (Doc. 1). Based on the 120 day limit, Plaintiffs had until March 8, 2011 to complete service. Fed. R. Civ. P. 4(m). At the time, Defendant James D. Powell was in the middle of his criminal proceedings, sentencing, and restitution hearings. While James D. Powell was sentenced for the acts that gave rise to this lawsuit on September 28, 2010, the restitution hearing was not held until December 7, 2010, and he was not incarcerated until January 2, 2011. *United States v. Powell*, 1:10cr75 (S.D. Ohio) (Doc. 22). Service upon the Defendants was perfected by March 28, 2011. (Doc. 12). On May 19, 2011, Plaintiffs issued subpoenas to several banks to investigate possible claims. (Doc. 108, Ex. 20 at ¶ 7). In June 2011, the banks responded to the subpoenas. (*Id.* at ¶ 9). On July 27, 2011, Plaintiffs issued three more subpoenas. (Docs. 17, 18, 19).[6] On October 11, 2011, Plaintiffs issued another subpoena asking for additional financial records. (Doc. 108 at 4). Shortly thereafter, on October 21, 2011, Plaintiffs issued subpoenas to eight additional financial institutions requesting

---

[5] Defendant argues that Plaintiffs' 2012 discovery of the 2007 transfer of the Midwest Trailer Park cannot be viewed as "reasonable." The Magistrate Judge points out that "very little transpired" after Plaintiffs first filed suit in October 2010. (Doc. 21). Ultimately, the Magistrate Judge agreed with Defendant James W. Powell that "Plaintiffs should not be permitted to sleep on their rights for some 17 months, then invoke the discovery rule to saddle defendants with the costs of defending otherwise stale claims." (Doc. 98 at 9). Specifically, the Magistrate Judge found that Plaintiffs "offered no evidence that they undertook [a] timely or reasonable inquiry concerning the 2007 transfer." (Doc. 103, 23). In response to the Magistrate Judge's Report and Recommendations, Plaintiffs submitted compelling evidence to the contrary.

[6] Plaintiffs first attempted service on Defendants James D. Powell, CI, GMD, and GMRE on January 19, 2011. (Doc. 22 at 3). Plaintiffs attempted service again on March 25, 2011. (*Id.*) Although Defendants were properly served, they simply did not answer.

5

additional documents related to six potential new defendants. (*Id*. at 4). On October 31, 2011, Plaintiffs issued yet another subpoena asking for additional financial documents. (Doc. 26).

At this point in the litigation, a Rule 26(f) report had yet to be filed because all parties had yet to answer. A scheduling order was finally docketed on January 5, 2012. (Doc. 35). In February and March 2012, based on the review of financial documents from sixteen subpoenas, Plaintiffs sent letters to seven potential defendants who appeared to have financial involvement in James D. Powell's fraudulent conduct. (Doc. 108, Ex. 20 at ¶¶ 13-14). Plaintiffs' counsel then engaged in significant communication with the potential defendants' lawyers. (Doc. 108 at 5). On March 23, 2012, while discussions were ongoing, Plaintiffs sent a subpoena to Bayview Loan Servicing requesting financial documents related to the Midwest Trailer Park. (*Id*., Ex. 20 at ¶ 15). On April 3, 2012, Plaintiffs learned that the Midwest Trailer park had an appraised value of $1,050,000. (*Id.* at ¶ 17). Based on the information acquired on April 3, 2012, Plaintiffs finally had sufficient information to bring a fraudulent transfer claim against James W. Powell and Curtis Powell related to the Midwest Trailer Park. (*Id*. at ¶ 20). The first amended complaint and jury demand with the fraudulent transfer claim was filed shortly thereafter on May 17, 2012. (*Id.* at ¶ 21).

Given the facts, specifically Defendant James D. Powell's lengthy criminal proceedings, the failure of multiple Defendants to answer, sixteen third party subpoenas,

and the review of significant financial documents, the Court finds that Plaintiffs were diligent in their prosecution and investigation.[7]

Accordingly, the Court declines to adopt the Report and Recommendations dismissing the claims for fraudulent transfer and conspiracy. This Court finds that Plaintiffs have submitted sufficient facts to show that the savings clause *may* apply. Unlike the Magistrate Judge, this Court finds that significant discovery did transpire after Plaintiffs filed suit in October 2010. The fact that Plaintiffs did not serve a subpoena on Silver Hill concerning the Midwest Trailer Park until March of 2012 appears reasonable given the amount of third party financial discovery. Still, disputed issues of fact remain concerning whether Plaintiffs knew or should have discovered the allegedly fraudulent nature of the transfer on an earlier date, and whether the savings clause applies is an issue of fact to be determined by the jury. *See, e.g., United States v. Green*, No. 100-cv-637 (S.D. Ohio June 15, 2007).[8]

### 2. *Counts six (Ohio RICO violation) and seven (conspiracy to violate Ohio RICO)*

Count six alleges a violation of Ohio's Pattern of Corrupt Activity Act, which is analogous to the federal RICO Act. In order to prevail under Ohio Rev. Code § 2923.31, *et seq.*, a plaintiff must establish: "(1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt

---

[7] The fact that Plaintiffs are represented by a solo practitioner is also relevant to this analysis.

[8] When a statute of limitations accrues is a factual question for the jury to decide, and courts, like this one, are hesitant to dismiss a case on such grounds. *Adcor Indus*, 411 F. Supp. at 786.

activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise that exists separate and apart from the defendant." *Hall v. CFIC Home Mtg.*, 888 N.E.2d 469, 477 (Ohio Ct. App. 2008).

In his motion to dismiss, Defendant James W. Powell argues that Plaintiffs have failed to adequately allege the first two elements – that he engaged in "two or more" criminal offenses sufficient to constitute "predicate acts," or that he engaged in a "pattern" of corrupt activity sufficient to state a claim under Ohio's RICO law. For the reasons stated in the Report and Recommendations, the Court finds that Plaintiffs have adequately pled that Defendant James W. Powell engaged in "two or more" "predicate offenses" and engaged in a "pattern" of corrupt activity. (*See* Doc. 103 at 12-19).

Count seven alleges a claim of conspiracy to violate Ohio's RICO law. Ohio Rev. Code §§ 2923.31(l), 2923.34(A). Because it is broader than the federal RICO statute, Ohio imposes a type of "strict liability" on persons who are guilty of participating in, "directly or indirectly," "two or more incidents of corrupt activity…that are related to the affairs of the same enterprise." *State v. Siferd*, 783 N.E.2d 591, 603 (Ohio Ct. App. 2002). Based on the concept of "strict liability" Plaintiffs are not required to prove that James W. Powell himself committed two or more predicate acts in order to prove the conspiracy offense alleged in count seven. Plaintiffs need only show that he cooperated in a "common plan." *Nat'l Century Fin. Enter., Inc. v. J.P. Morgan Chase Bank*, 604 F. Supp.2d 1128, 1157 (S.D. Ohio 2009). As fully explained in the Report and Recommendations (Doc. 103 at 19-20), Plaintiffs' allegations "sufficiently alleged that

8

some members of the enterprise engaged in the predicate offense of 'Tampering with Records' in violation of Ohio law."

Accordingly, the Court adopts the Report and Recommendations with respect to counts six and seven.

### 3. *Failure to prosecute*

"[D]ismissal for failure to prosecute is a harsh sanction which the court should order only in extreme situations." *Wu v. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005). A district court should not dismiss for failure to prosecute unless there is a "clear record of contumacious conduct by the plaintiff." *Id.* While this Court certainly recognizes the age of this case, it also acknowledges the completion of significant third party discovery. Ultimately, in considering the requisite factors to dismiss for failure to prosecute, the Court finds that Plaintiffs were not given adequate warning of dismissal as required. *See, e.g., Wu*, 420 F.3d at 644. Moreover, this Court seeks to decide cases on the merits and not procedural defaults. *See Foman v. Davis*, 371 U.S. 178 (1962). However, Plaintiffs have now been sufficiently warned, and this Court will not permit further delays. Plaintiffs shall file for entry of default against Defendants CI, GMD, GMRE, and Chatsworth Jacobs within 14 days of the date of this Order. Failure to do so will result in dismissal of the parties for failure to prosecute and failure to comply with a Court

Order.[9]

### B. Objection to Amended Order

On May 6, 2013, while Plaintiffs' objections to the Report and Recommendations were pending, the parties and the Magistrate Judge engaged in a totally unrelated discovery conference. (Docs. 118, 129). On May 8, 2013, when the Magistrate Judge issued an Order on the disputed discovery issues, she circled back to the March 28, 2013 Report and Recommendation, recommending that, in addition to the parties already recommended for dismissal, James D. Powell should also be dismissed because Plaintiffs had not served him with a copy of the first amended complaint and jury demand. (Doc. 132 at 1).

Plaintiffs perfected service on James D. Powell pursuant to Fed. R. Civ. P. 4, after having the Monongalia County Sheriff served him with a summons and complaint at the Morgantown Federal Correctional Institution. (Doc. 7). Once Defendant was served with the summons and complaint, the rules of service change from Rule 4 to Rule 5. The amended complaint was a "pleading filed after the original complaint." Fed. R. Civ. P.

---

[9] After filing objections to the Magistrate Judge's Report and Recommendations (Doc. 108), Plaintiffs subsequently filed a motion for leave to file a supplemental memorandum with additional objections/facts. (Doc. 112). Given that this Court hereby denies dismissal of the four Defendants based on the original objections (Doc. 108), Plaintiffs' motion is **DENIED** as **MOOT**. Accordingly, Defendant James W. Powell's motion to strike (Doc. 115) is **DENIED** as **MOOT** and Defendant Deanna Powell's motion in support of opposition (Doc. 122) is **DENIED** as **MOOT**. Defendants' motions to strike only reference the Diana Bradley affidavit that was filed as an attachment to the motion for leave to file a supplemental memorandum. (*See* Doc. 117 at 1 referencing Doc. 112). Accordingly, the Court presumes that counsel does not object to the affidavit filed in support of Plaintiffs' objections to the Report and Recommendation. Even if Defendants intended to file a motion to strike the first affidavit (*See* Doc. 108, Ex. 20), the Court would deny the motions and simply convert the motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(d). *See also Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989).

5(a). Rule 5 states that service of a pleading after the original complaint may be completed by "mailing it to the person's last known address – in which event service is complete on mailing." Fed. R. Civ. P. 5(b)(2)(C).

Therefore, the issue is whether Plaintiffs served James D. Powell at his "last known address." Fed. R. Civ. P. 5(b)(2)(C). At the time Plaintiffs filed their amended complaint, James D. Powell had moved from the Morgantown FCI to the Elkton FCI in Lisbon, Ohio. (Doc. 40). By reviewing the Certificate of Service on Plaintiffs' complaint, the Court confirms that Plaintiffs served the amended complaint at the Elkton FCI in Lisbon, Ohio. (Doc. 46 at 32). When they served the amended complaint, Plaintiffs also included a cover letter with the same Lisbon address. (Doc. 108, Ex. 4, Appendix D at 11).

Accordingly, pursuant to Rule 5, Plaintiffs' service of the amended complaint was "complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). Moreover, Defendant James D. Powell has "participated extensively in the litigation" and therefore "forfeited his defense" to any alleged defective service. *King v. Taylor*, 694 F.3d 650, 658-59 (6th Cir. 2012). (*See also* Docs. 41, 42, 43).

### III. CONCLUSION

As required by 29 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter. Upon consideration of the foregoing, the Court does determine that:

Case: 1:10-cv-00760-TSB Doc #: 147 Filed: 05/30/13 Page: 12 of 12 PAGEID #: 1907

1. The Magistrate Judge's Report and Recommendations (Doc. 103) is **ADOPTED IN PART** and **NOT ADOPTED IN PART**. Specifically, James W. Powell's motion to dismiss (Doc. 93) is **DENIED** in its entirety;

2. Plaintiffs' motion for leave to file a supplemental memorandum (Doc. 112) is **DENIED** as **MOOT**;

3. Defendant James W. Powell's motion to strike (Doc. 117) is **DENIED** as **MOOT**;

4. Defendant James D. Powell's motion for an extension of time and motion to properly serve exhibits[10] (Doc. 120) is **DENIED** as **MOOT**;

5. Defendant Deanna Powell's motion in support of opposition (Doc. 122) is **DENIED** as **MOOT**;

6. Plaintiffs' objection to the Magistrate Judge's Amended Order (Doc. 132) is **GRANTED**;

7. Plaintiffs shall file a motion for entry of default against Defendants Capital Investments, Great Miami Debentures, Great Miami Real Estate, LLC, and Chatsworth Jacobs within 14 days of the date of this Order[11]; and

8. Defendants shall file memoranda in opposition to the pending motion for partial summary judgment (Doc. 111) within 21 days of the date of this Order.

**IT IS SO ORDERED**.

Date: 5/30/13                                                                 *s/ Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge

---

[10] Defendant James D. Powell's motion to properly serve exhibits is **DENIED** as **MOOT** given Plaintiffs' subsequent service of the exhibits. (Doc. 138).

[11] This Court acknowledges Plaintiffs' argument for holding a motion for default judgment (on damages) in abeyance pending the conclusion of discovery. Nonetheless, Plaintiffs must still file a motion *for entry of default* within 14 days. The discovery deadline is June 14, 2013, by which time Plaintiffs should have gathered all information necessary to file a motion for default judgment (as to damages). Therefore, Plaintiff's motion for default *judgment* (damages) shall be filed on or before July 8, 2013.

12